FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA; BUTCH PARKER; SCOTT FLANNERY; WILLIAM CRAWFORD; TRUMAN JORDAN,<br>            *Plaintiffs-Appellants*, | No. 13-35095<br><br>D.C. No.<br>2:11-cv-05159-TOR |
| v. | OPINION |
| METAL TRADES DEPARTMENT, AFL-CIO; HANFORD ATOMIC METAL TRADES COUNCIL,<br>            *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted
May 12, 2014—Seattle, Washington

Filed October 28, 2014

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Labor Law

The panel affirmed the district court's dismissal of the United Brotherhood of Carpenters and Joiners of America's action alleging that the Metal Trades Department, AFL-CIO, violated the federal duty of fair representation.

The Carpenters, a labor union, alleged that, as part of a campaign to force it to reaffiliate, the Building and Construction Trades Department, AFL-CIO, an umbrella labor organization, convinced the Metal Trades to expel the Carpenters from its membership. The Carpenters alleged that the Metal Trades waged a campaign against Carpenters members that included stripping them of their preferential positions as union stewards solely because they were members of the Carpenters.

The panel held that the Carpenters failed to state a claim for breach of the duty of fair representation because this duty does not forbid consideration of union affiliation in the appointment and removal of stewards. The panel held that a union's selecting stewards from whom it might expect undivided loyalty—that is, from members of an affiliated union, rather than an unaffiliated union—is not unreasonable discrimination and does not, without more, breach the duty of fair representation.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Craig D. Singer, Williams & Connolly LLP, Washington, DC, argued the cause and filed the briefs for the plaintiffs-appellants. With him on the briefs were Charles Davant IV, Williams & Connolly LLP, Washington, DC, and Daniel M. Shanley, DeCarlo & Shanley, Los Angeles, CA.

Keith Bolek, O'Donoghue & O'Donoghue LLP, Washington, DC, argued the cause and Craig A. Power, O'Donoghue & O'Donoghue LLP, Washington, DC, filed the brief for the defendants-appellees.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the duty of fair representation requires unions to appoint and to remove stewards without regard to union affiliation.

I

The United Brotherhood of Carpenters and Joiners of America ("Carpenters") represents half a million workers throughout North America, including plaintiffs-appellants Butch Parker, Scott Flannery, William Crawford, and Truman Jordan. The Metal Trades Department, AFL-CIO, ("Metal Trades") is a labor organization that negotiates, administers, and enforces collective bargaining agreements. The Hanford Atomic Metal Trades Council is a labor organization affiliated with the Metal Trades. Hundreds of Carpenters'

4              CARPENTERS V. METAL TRADES

members, including the four named plaintiffs, are members of bargaining units represented by the Metal Trades.

In 2008, the Building and Construction Trades Department, AFL-CIO, ("Building Trades") an umbrella labor organization, launched the "Push-Back-Carpenters Campaign" to force the Carpenters to reaffiliate with the Building Trades.[1]  To pressure the Carpenters, the Building Trades enlisted the Metal Trades in its campaign, convincing the Metal Trades to expel the Carpenters from its membership.  The Metal Trades "kicked out" the Carpenters by dissolving a "Solidarity Agreement" between the two labor organizations.

Allegedly, the Metal Trades waged "a discriminatory, arbitrary, and bad-faith campaign," targeting Carpenters' members, intended "to punish the Carpenters for reasons unrelated to the Metal Trades or the fair representation of its . . . bargaining unit members" who were Carpenters' members.  This campaign included stripping Carpenters' members of their preferential positions as stewards.[2]

The Carpenters, on behalf of its members whose bargaining units were represented by the Metal Trades, including Parker, Flannery, Crawford, and Jordan, sued the Metal Trades and one of its affiliated unions, the Hanford

---

[1] As we are reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we accept as true the complaint's well-pleaded factual allegations.  *E.g.*, *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).

[2] Other allegations made by the Carpenters are addressed in a memorandum disposition filed concurrently with this opinion.

CARPENTERS V. METAL TRADES            5

Atomic Metal Trades Council. Its initial complaint alleged that the Metal Trades, both by itself and through its non-party affiliates, breached the federal duty of fair representation.

The district court dismissed the complaint, concluding that the Carpenters failed to provide sufficient factual support for its allegations. The court granted leave to amend.

In its amended complaint, the Carpenters included additional detailed factual allegations, but once again, the court dismissed for failure to state a claim, this time with prejudice. The Carpenters timely appealed.

II

Section 9(a) of the National Labor Relations Act grants to designated unions the "exclusive power to represent all employees in a particular bargaining unit." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 86–87 (1989) (citing 29 U.S.C. § 159(a)). With the power to represent even unaffiliated workers comes the responsibility—"created by the courts"—to "exercise [such] power in their interest and behalf." *Simo v. Union of Needletrades, Indus. & Textile Emps.*, 322 F.3d 602, 610–11 (9th Cir. 2003) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991)). This "duty of fair representation" is the "obligation to serve the interests of all members [of a bargaining unit] without hostility or discrimination toward any, to exercise . . . discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

The duty of fair representation arises where "a union is acting under authority granted by statute or a collective

| 6 | CARPENTERS V. METAL TRADES |
|---|---|

bargaining agreement." *Simo*, 322 F.3d at 613. It applies both to the negotiation, *Air Line Pilots Ass'n*, 499 U.S. at 77, and to the administration, *Breininger*, 493 U.S. at 88, of collective bargaining agreements. But "[d]efinitionally," it "does not apply where the union is not representing the workers in question." *Simo*, 322 F.3d at 614. "[A] union . . . can be held to represent employees *unfairly* only in regard to those matters as to which it represents them *at all*—namely, 'rates of pay, wages, hours . . . , or other conditions of employment.'" *Int'l Bhd. of Teamsters, Local No. 310 v. NLRB*, 587 F.2d 1176, 1183 (D.C. Cir. 1978) (second omission in original) (quoting 29 U.S.C. § 159(a)). "In other words, the duty of fair representation extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure." *Kolinske v. Lubbers*, 712 F.2d 471, 481 (D.C. Cir. 1983) (citing *Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058 (5th Cir. 1980)).

In *Bass*, for example, the duty of fair representation did not apply to a union's dismissing two members from an apprenticeship program. Because the union was not the exclusive representative for those in the program, and dismissal did not interfere with the members' relationship to their employer, the union's decision was an "internal affair[]" not subject to judicial scrutiny. *See* 630 F.2d at 1062–63. And courts have "usually excluded internal union affairs" from the duty to provide fair representation. *Kolinske*, 712 F.2d at 481.

But merely labeling an arbitrary decision "internal" will not relieve the union of its duty, because even internal union affairs may "have a substantial impact upon the external relationships of members of the unit to their employer."

*Retana v. Apt., Motel, Hotel & Elevator Operators Union, Local No. 14*, 453 F.2d 1018, 1024 (9th Cir. 1972). Where the union's "internal" decisions "have a substantial impact upon members' rights in relation to the negotiation and administration of the collective bargaining agreement," the question is whether a union is making "'an honest effort to serve the interests' of *all* members of the bargaining unit." *Id.* at 1024–25 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953)); *see also Air Line Pilots Ass'n*, 499 U.S. at 67 ("[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith . . . . [A] union's actions are arbitrary only if . . . the union's behavior is so far outside 'a wide range of reasonableness" . . . as to be irrational." (quoting *Ford Motor Co.*, 345 U.S. at 338)).

A

The Carpenters' complaint alleges that the Metal Trades violated the duty of fair representation by removing Carpenters' members from their positions as stewards based on union affiliation. Whether the duty of fair representation forbids consideration of union affiliation in the appointment and removal of stewards presents a question of first impression among federal appellate courts.[3]

---

[3] Three of the district court cases cited by the parties, including this case, have suggested that such question turns on whether selection of stewards is left to the union's discretion under the relevant collective bargaining agreement. *See Maddalone v. Local 17, United Bhd. of Carpenters*, 1996 WL 562986, at *5 (S.D.N.Y. Oct. 3, 1996), *aff'd in part, rev'd in part on other grounds*, 152 F.3d 178 (2d Cir. 1998); *Brett v. Sohio Const. Co.*, 518 F. Supp. 698, 703 (D. Alaska 1981). But an exclusive bargaining agent is required "to exercise its *discretion* with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177 (emphasis

1

A steward is "[a] union official who represents union employees and who oversees the performance of union contracts." Black's Law Dictionary 1549 (9th ed. 2009); *see also Kudla v. NLRB*, 821 F.2d 95, 100 (2d Cir. 1987) (recognizing "the vital role that stewards play in the collective bargaining process by policing the contract, advising employees on contractual provisions and representing employees in on-site grievance proceedings"). Thus, the discharge of a steward to maintain "cohesive leadership" in a union has been called "a legitimate union interest and a plainly internal affair." *NLRB v. Int'l Bhd. of Boilermakers*, 581 F.2d 473, 476 (5th Cir. 1978) (internal quotation marks omitted).[4]

---

added); *see also Ford Motor Co.*, 345 U.S. at 338 ("A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose *in the exercise of its discretion*." (emphasis added)). Where a union has more power, "its responsibility to exercise that power fairly *increases* rather than *decreases*." *Breininger*, 493 U.S. at 89. What terms to seek or to accept in contract negotiation, for example, is surely "discretionary," but subject nonetheless to the duty of fair representation. *Air Line Pilots Ass'n*, 499 U.S. at 67 (holding that unions are permitted a "wide range of reasonableness" in exercising such discretion (citation omitted)). On appeal, the Metal Trades does not suggest that its removal of stewards was not subject to the duty of fair representation merely because it was within the discretion afforded by the collective bargaining agreements.

[4] Because removal of the steward was an internal affair, our sister circuit concluded that it was not an unfair labor practice under section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A). *Boilermakers*, 581 F.2d at 476, 478. The duty of fair representation, though, is not "defined in terms of what is an unfair labor practice." *Breininger*, 493 U.S. at 86. "[A] breach of the duty of fair representation also [can] be an unfair labor practice,"

CARPENTERS V. METAL TRADES 9

Stewards are not simply employees—although they are that[5]—they are also representatives of the union. *E.g.*, *Charles Leonard, Inc.*, 131 NLRB 1104, 1105 (1961) (noting that "shop steward and shop committee are arms of the contracting union"). As representatives of the union, stewards are bound by its duty to represent the rank-and-file members of the bargaining unit fairly. "A shop steward with grievance processing responsibilities *is* the union *vis-à-vis* the employees as well as the employer." *Local 254, SEIU*, 332 NLRB 1118, 1122 (2000) (internal quotation marks and citation omitted). A steward's violation of the duty of fair representation is the union's violation, for which it may be sued. *See, e.g.*, *Branch 3126, Nat'l Ass'n of Letter Carriers*, 330 NLRB 587, 587 (2000) (finding that a steward's discriminatory action breached the union's duty of fair representation, even though the steward acted alone and not according to union policy). According to the Carpenters' own complaint, the Metal Trades violated its duty of fair representation when its *stewards* failed to process particular

---

but the two concepts are not fully coextensive—"a union may breach its duty of fair representation without committing an unfair labor practice and vice versa." *Lucas v. NLRB*, 333 F.3d 927, 932 (9th Cir. 2003). Thus *Boilermakers* does not hold that removal of stewards is not subject to such duty. Nevertheless, we have found it useful to consider unfair labor practice cases in defining the duty of fair representation's scope. *See Retana*, 453 F.2d at 1024 (citing *Wallace Corp. v. NLRB*, 323 U.S. 248 (1944) (holding that corporation committed unfair labor practice)).

[5] "[T]he Chief Shop Steward really does serve the interests of the employer . . . [a]lthough he may not be operating machinery." *Int'l Ass'n of Machinists, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Grp.*, 387 F.3d 1046, 1057 (9th Cir. 2004). Wages paid by an employer to a steward, who may be a full-time representative of the union, are paid as compensation for their "service as an employee of such employer." *Id.* at 1047, 1060.

10          CARPENTERS V. METAL TRADES

grievances.  *See Nat'l Ass'n of Letter Carriers, Branch 3126 v. NLRB*, 281 F.3d 235, 237 (D.C. Cir. 2002) (noting that union breached duty of fair representation because its steward refused to file a grievance).

2

According to the Carpenters, the Metal Trades violated the duty of fair representation by removing Carpenters' members from positions as stewards solely because they were members of the Carpenters.  We can see no meaningful difference in a union's discretion between appointing stewards and removing them, and the Carpenters have given no reason to treat them differently.  Thus, if the Carpenters' contention that the Metal Trades breached its duty when it *removed* stewards because of their union affiliation is correct, it follows that a union would breach its duty by *appointing* stewards based on their union affiliation.  That is to say, exclusive bargaining unions would be required to select stewards regardless of membership in an affiliated union, or in *any* union.  To justify its extraordinary argument, the Carpenters' brief cites no case remotely on point.  For good reason—no court has suggested that the duty of fair representation requires unions to appoint or remove union officers and representatives without regard to union affiliation.

The Carpenters' argument relies heavily on *Retana*, where we noted that even "internal" union policies and practices could be subject to the duty of fair representation, which "'arises out of the union-employee relationship and pervades it.'"  453 F.2d at 1024 (quoting *Nedd v. United Mine Workers*, 400 F.2d 103, 106 (3d Cir. 1968)).  Even "internal" policies "may have a substantial impact" upon the employees'

relationship to their employer. *Id.* (citing *Wallace Corp.*, 323 U.S. 248).

In *Retana*, a discharged hotel maid sued on behalf of Spanish-speaking members of her union, alleging that her union's failure to provide, for example, a Spanish translation of the collective bargaining agreement violated the duty of fair representation. *Id.* at 1021, 1023. Although we declined in that case "to attempt a . . . precise delineation of the scope of the duty of fair representation," we noted a possible violation of the union's duty "to make an honest effort to serve the interests of *all* members of the bargaining unit." *Id.* at 1024–25 (internal quotation marks omitted). The union's alleged failure to take relatively easy and inexpensive steps to accommodate its Spanish-speaking members suggested— adequately under the relaxed pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957)—that the union was not negotiating or administering in good faith on their behalf.

By contrast, requiring stewards to be affiliated with the exclusive bargaining representative does not—at least not plausibly, *see Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104, 1107 (9th Cir. 2013)—imply that the union is failing to serve in good faith the interests of *all* members of the bargaining unit.

In *Local 254*, the National Labor Relations Board described the necessity of a union's selecting stewards of its own choosing. 332 NLRB at 1122. A union has a "legitimate interest in speaking with one voice, through trusted representatives, in dealing with the [e]mployer about the bargaining unit employee[s'] terms and conditions of employment." *Id.*; *cf. Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 70 (1975) (A union "has a

12    CARPENTERS V. METAL TRADES

legitimate interest in presenting a united front . . . and in not seeing its strength dissipated and its stature denigrated by subgroups within the unit separately pursuing what they see as separate interests."). Such interest is "self-evident" regarding the selection of stewards; an exclusive-bargaining union administers a collective bargaining agreement, day-by-day, through its stewards, and the stewards, in turn, *are* the union. *Local 254*, 332 NLRB at 1122. "In the performance of that important representational function, a union is *entitled* to have as its agents only those persons whom it trusts to act with an undivided loyalty." *Id.* (emphasis added); *accord Metro. Edison Co. v. NLRB*, 460 U.S. 693, 704 n. 9 (1983) ("[N]o one, whether employer or employee need have as his agent one who is obligated to those on the other side, or one whom, for *any* reason, he does not trust."). Consequently, the appointment and the removal of stewards have uniformly been considered "internal union affairs." *See, e.g.*, *Boilermakers*, 581 F.2d at 476; *see also Local 254*, 332 NLRB at 1123.

 To be sure, *Local 254* concerned unfair labor practices, not the duty of fair representation, but a union's interest in working through trusted and loyal representatives is equally legitimate and equally weighty in both contexts. We have held that the duty of fair representation "does not impose upon a union the duty to open wide its doors to anyone." *Moynahan v. Pari-Mutuel Emp. Guild of Cal., Local 280*, 317 F.2d 209, 211 (9th Cir. 1963). If that is so in selection of members, how much more is it in selection of union stewards.

 A union serves the rank-and-file members of a bargaining unit through its stewards and is entitled, in the interest of serving all fairly, to the loyalty of its stewards. The duty to represent fairly all members of a bargaining unit may

CARPENTERS V. METAL TRADES         13

therefore permit the union to discriminate based on union affiliation.  "Because the interests of a few individuals often must give way to the interests of the group, courts have given unions wide latitude."  *Bernard v. Air Line Pilots Ass'n, Int'l*, 873 F.2d 213, 216 (9th Cir. 1989).

3

"Wide latitude," of course, does not necessarily "mean a union may discriminate on the basis of union membership." *Id.*  A union is obliged to act "fairly and in good faith, and without *unreasonable* discrimination." *Nedd*, 400 F.2d at 105 (emphasis added).  The duty of fair representation requires unions to serve the interests of all members of the bargaining unit, without unreasonably discriminating against the interests of one particular group.  Usually, such discrimination on the basis of union membership is excellent evidence that the union is promoting the interests of one group above another. So in *Bernard*, we noted two facts that supported finding a violation of the duty of fair representation: the union not only (1) refused to appoint members of a nonunion pilot group to a team negotiating an integration agreement after a merger, but also (2) failed to follow its merger policy of conducting internal negotiations with that group.  873 F.2d at 216. Failure to take either action demonstrated that the union was not fairly representing the nonunion pilot group's interests. In particular, failing to follow the merger policy was strong evidence of bad faith.  *See id.* at 217.

The Carpenters' brief does not assert that any discrimination based on union affiliation is *per se* a violation of the duty of fair representation. Quoting *Bernard*, 873 F.2d at 216, it contends that "a union *may* breach the duty if it 'discriminates on the basis of union membership.'" (emphasis

added). As one of our sister circuits reasoned, "because a union by necessity must differentiate among its members in a variety of contexts, *see Ford Motor Co.*[, 345 U.S. at 338], a showing that union action has disadvantaged a group of members, *without more*, does not establish a breach of the duty of fair representation." *Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 221 (2d Cir. 1989) (emphasis added) (citing *Bernard*, 873 F.2d at 216); *accord Dement v. Richmond, Fredericksburg & Potomac R.R. Co.*, 845 F.2d 451, 458 (4th Cir. 1988) ("[T]he fact that [some] employees do not benefit under the . . . Agreement does not in and of itself constitute 'discrimination' amounting to a breach of the union's duty of fair representation.").

A union's selecting stewards from whom it might expect undivided loyalty—that is, from members of an affiliated union, rather than an unaffiliated union—is not unreasonable discrimination and does not, without more, breach the duty of fair representation.

B

The Carpenters' complaint does not allege that the Metal Trades removed Carpenters' members from positions as stewards for any reason other than union affiliation. According to the complaint, the Metal Trades informed Carpenters-affiliated stewards that they were being removed as stewards "[f]ollowing its decision to kick out the Carpenters." They were removed "for no reasons other than their Carpenters membership and the refusal of the Carpenters to meet the non-Metal Trades-related demands of the Building Trades." In other words, Carpenters' members were stripped of their steward positions because the Carpenters were no longer affiliated with the Metal Trades and refused

CARPENTERS V. METAL TRADES     15

to affiliate with the Building Trades. But if those individuals had been willing to join a union affiliated with the Metal Trades, *they would not have been removed as stewards*. One such individual, "BS," was allowed to remain a steward when he agreed to join the Boilermakers, an affiliate—through the New Orleans Metal Trades Council—of the Metal Trades.

Even if the Metal Trades "singled out" Carpenters-affiliated workers "because of their union affiliation," then, the Carpenters' complaint fails to state a breach of the duty of fair representation as a matter of law.

III

We conclude that the duty of fair representation does not prevent unions from appointing or removing stewards based on union affiliation. The Carpenters' allegation that the Metal Trades removed Carpenters' members as stewards merely because of their affiliation with the Carpenters thus fails as a matter of law to state a claim.

**AFFIRMED.**